[No. 44586. En Banc. December 29, 1977.]

VIRGINIA KYREACOS, *Individually and as Executrix, Appellant,* v. DAVID TERRON SMITH, ET AL, *Respondents.*

---

*Daniel Brink* (of *Trethewey & Brink*), for appellant.

*Scholfield & Stafford,* by *Jack P. Scholfield* and *A. Richard Dykstra,* for respondents.

BRACHTENBACH, J.—This is a damage action for wrongful death brought by a widow, individually and as executrix of her husband's estate. Plaintiff's husband was shot to death by a Seattle police detective. That detective, a defendant in this case, was convicted of first–degree murder; the conviction was affirmed on appeal. *State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975). The bizarre circumstances of the murder are set out in *State v. Smith, supra.* For purposes of this opinion, suffice it to say that the jury was convinced that Detective Smith was guilty of premeditated murder in killing plaintiff's husband.

Plaintiff sued the City of Seattle and Detective Smith. She alleged four causes of action for damages: (1) liability of the City under the doctrine of respondeat superior for Detective Smith's act in killing her husband; (2) negligence

in hiring and training Detective Smith; (3) negligence in failing to provide protection to the decedent; and (4) violation of decedent's civil rights.

Defendant City moved for summary judgment on all issues. The trial court, taking judicial notice of the facts in *State v. Smith, supra,* granted a summary judgment in the City's favor as to the respondeat superior cause of action but did not rule on the remaining claims. Thus the only issue before us is the propriety of summary judgment on the question of whether, under these facts, the City can be liable under the doctrine of respondeat superior. The trial court held that the commission of a first–degree murder is, as a matter of law, outside the scope and course of Detective Smith's employment by the City. We affirm.

The essence of plaintiff's argument is that the first–degree murder conviction of defendant Detective Smith is not conclusive on the issue whether Smith was within the scope and course of his employment in killing plaintiff's husband. Plaintiff argues that the criminal conviction does not prevent relitigation in the civil case of the issue of premeditation as related to scope of employment.

Plaintiff urges that the trial court necessarily relied upon the doctrine of res judicata to hold the criminal conviction determinative on the question of scope of employment. More accurately, the principle involved is collateral estoppel, a kindred but somewhat different idea. Res judicata prevents relitigation of the same cause of action while collateral estoppel prevents relitigation of a particular issue or determinative fact necessary to a prior decision in a different cause of action. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967); *Bahler v. Fletcher,* 257 Ore. 1, 474 P.2d 329 (1970); Comment, 7 Willamette L.J. 151 (1971).

We have said:

Both doctrines [res judicata and collateral estoppel] require a large measure of identity as to parties, issues and facts, and in neither can the party urging the two

doctrines as a defense be a stranger to the prior proceeding. He must have been a party, a participant, or in privity with either, and the action out of which the bar is claimed must be qualitatively the same as the case in which the doctrine is set up as a bar.

*Bordeaux v. Ingersoll Rand Co., supra* at 396. These words express the doctrine of mutuality. Historically mutuality has been an essential ingredient of collateral estoppel but an erosion has set in as to its applicability. We noted that in dictum in *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 431 P.2d 961 (1967), which was applied in *Lucas v. Velikanje*, 2 Wn. App. 888, 471 P.2d 103 (1970), and noted in *Gibson v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 3 Wn. App. 214, 473 P.2d 440 (1970).

We acknowledge that plaintiff was not a party nor in privity with a party in the criminal case. However, this is a most unique case which must be confined to its peculiar facts and to its procedural posture.

We must determine whether it will work an injustice upon the plaintiff to hold as a matter of law that the murder conviction conclusively determines that Detective Smith was outside the scope of his employment. Stated differently, will the plaintiff be prejudiced by lack of identity, mutuality, in the criminal case?

We conclude that allowing relitigation of the character of the act of murder would be an absurd result under the facts and pleadings of this case. First, the plaintiff chose to name Detective Smith as a defendant in this civil action. Thus his conviction of premeditated first–degree murder could be introduced to impeach his credibility.

Second, in response to a request for admissions, plaintiff admitted the fact of conviction and the court took judicial notice of our affirmance of that conviction in *State v. Smith, supra.*

Third, while the issue is not before us here, we note respectable authority that defendant Smith might be conclusively bound in this action by the determination of issues in the criminal case. *Teitelbaum Furs, Inc. v.*

*Dominion Ins. Co.,* 58 Cal. 2d 601, 375 P.2d 439, 25 Cal. Rptr. 559 (1962), *cert. denied,* 372 U.S. 966, 10 L. Ed. 2d 130, 83 S. Ct. 1091 (1963).

Fourth, this matter was determined on a motion for summary judgment. Thè fact of conviction and the overwhelming evidence of premeditation set forth in *State v. Smith, supra,* was before the court. While plaintiff argues that Detective Smith might have been carrying out a police function in using necessary force while attempting to arrest decedent, plaintiff brought forth no facts to overcome the determination that Smith committed a premeditated murder. Facing a motion for summary judgment, a party cannot rely upon speculation and allegations to meet contrary facts.

Fifth, we can conceive of no prejudice to plaintiff by the fact that she did not participate in any manner in the criminal trial. As pointed out in *State v. Smith, supra,* the whole sequence of events leading to this murder was recorded by a recorder taped to the decedent's body. After listening to that tape, one can reach no conclusion but that Detective Smith set out to and did in fact murder the decedent with premeditation.

When 12 jurors have been convinced, unanimously and beyond a reasonable doubt, that Smith was guilty of that premeditated murder, it would be totally contrary to logic and common sense to permit a civil jury to conclude otherwise.

■ This then brings the case within the rule that if a servant steps aside from his master's business and, in order to effect some purpose of his own, commits an assault, the master is not liable. *Westerland v. Argonaut Grill,* 185 Wash. 411, 55 P.2d 819 (1936). Directly in point is *Green Cove Springs v. Donaldson,* 348 F.2d 197 (5th Cir. 1965), where a police officer arrested a woman for a traffic offense and then raped her. The court logically and correctly held that while the scope of employment is normally a fact question, in some cases the jury could only reach one conclusion in which case it could be determined as a matter of

law. *Accord, Snell v. Murray,* 117 N.J. Super. 268, 284 A.2d 381, *aff'd,* 121 N.J. Super. 215, 296 A.2d 538 (1972).

Commission of premeditated murder by a policeman simply precludes any possibility that he was acting within the scope and course of his employment.

The trial court was correct in granting a summary judgment.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, HORO- WITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J., concurs in the result.