[No. 3535–II. Division Two. April 25, 1980.]

J. W. BEAGLES, *Appellant,* v. SEATTLE–FIRST NATIONAL BANK, ET AL, *Respondents.*

*William J. Rush,* for appellant.

*Lauren D. Studebaker,* for respondents.

ARMSTRONG, J.*—The basic issue in this appeal is whether a party to a reorganization agreement, unhappy with the valuation of stock transferred pursuant to the agreement, is precluded by collateral estoppel from enforcing an arbitration clause contained in the agreement. We hold that he is not and reverse the order of the trial court granting defendant's motion for summary judgment.[1]

In 1971 J. W. Beagles and the other stockholders of Computech Corporation entered a reorganization agreement by which a subsidiary company of defendant Seattle–First National Bank acquired the stock of Computech. The reorganization agreement established a purchase plan by which the stockholders were to be paid for their stock out of a fund made up of the net profits of the successor corporation. Assuming the fund showed a profit, payments could

---

*Judge Ralph Armstrong is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]By stipulation the parties have agreed to name Seafirst Computer Services Corporation, the successor corporation of Computech Corporation, as a party defendant. In accordance with this stipulation, the trial court's motion for summary judgment shall be deemed to have been made by and granted to Seafirst Computer Services, Inc.

begin on January 1, 1974, and the plan was to terminate on January 15, 1977. The reorganization agreement provided that net income for purposes of the purchase plan fund would be determined by generally accepted accounting principles and that disputes "shall be submitted to a mutually acceptable independent certified public accountant for arbitration" whose decision shall be binding on the parties. For purposes of disbursement, valuation was to be made at the end of the fiscal quarter preceding payment with valuation determined by the records of the plan or, if the parties could not agree, by an independent accountant. The parties also agreed that plaintiff and the other stockholders would remain in their management positions as employees of the successor corporation during the buy out period.

Following substantial losses in 1972, an officer of defendant informed plaintiff that it would be impossible for the purchase plan fund to show a profit before 1977 and that he should not expect any payment for his Computech stock. Plaintiff disputed this and claimed that if certain additions were made to the net profit and loss statement the corporation and the purchase plan fund would show a net profit.

In 1974 plaintiff filed suit in Federal District Court under Rule 10b–5 of the 1934 Securities and Exchange Act alleging a fraudulent scheme on the part of defendant to deprive the Computech stockholders of their stock without payment. After hearing evidence, the Federal District Court dismissed the 10b–5 action in January 1977 and entered judgment for defendant. In its findings the Federal Court accepted the view of defendant that Computech was in poor financial condition when defendant acquired its stock in 1971, and that the severe losses in 1972 were caused by the continued poor management by plaintiff and the other Computech stockholders and not, as plaintiff had argued, by deliberate mismanagement by defendant so that the corporation would not show a profit. Included in its findings, the Federal District Court entered finding of fact No. 113 which approved defendant's method of accounting:

The value of the Purchase Plan Fund as of the end of 1975, taking into account appropriate adjustments from the books and records of the corporation to reflect the difference between the operating books of the corporation and the accounting for the Purchase Plan Fund, which adjustments are the add–back of the amortization of the Tally software; the add–back of rental charged in 1973 in excess of the $8,500 figure agreed to by Mr. Beagles; the add–back of the chargeoff of Tally leasehold improvements and the add–back of the management bonus paid in 1974, *but without taking into account any other adjustments proposed by the plaintiffs herein, which adjustments the Court finds to be either too speculative or inappropriate,* was a negative $418,931. The company will not show after–tax profits during the year 1976 sufficient to overcome this negative value and the Computech management group will not be entitled to any distribution from the Purchase Plan Fund.

(Italics ours.)

Plaintiff continued to dispute the method of accounting used by defendant and demanded a formal accounting in March 1977. Defendant provided a financial statement from its accountant showing a negative balance for the fund as of December 31, 1976. The financial statement for the same period prepared by plaintiff's accountant showed a net profit in the fund available for distribution. The discrepancy in the two accountings is explained primarily by the additional adjustments made by plaintiff's accountant to the net profit and loss figures.

Following submission of the two accountings, plaintiff demanded that an independent accountant be appointed to resolve the dispute pursuant to the arbitration clause contained in the reorganization agreement. Defendant refused, claiming that its accounting method had already been approved by the Federal District Court. Plaintiff subsequently filed the present action in state court to enforce the arbitration clause. Defendant moved for summary judgment arguing that the issue of the proper accounting method had already been determined in the federal securities action and that plaintiff was precluded from reopening

the question of the proper accounting method in a new lawsuit by collateral estoppel. The trial court agreed and entered judgment for defendant.

Collateral estoppel prevents the relitigation of a particular issue or determinative fact after the party estopped has had a full and fair opportunity to present its case in order to promote the policy of ending disputes. *E.g., Henderson v. Bardahl Int'l Corp.,* 72 Wn.2d 109, 115, 431 P.2d 961 (1967); *Clippinger v. Birge,* 14 Wn. App 976, 983, 547 P.2d 871 (1976). The modern requirements for application of the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice. *Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d 103 (1970). *Accord, Dunlap v. Wild,* 22 Wn. App. 583, 589–90, 591 P.2d 834 (1979). The only element at issue in the present case is the first element: whether the proper method of accounting for purposes of valuation of plaintiff's stock was determined in the federal securities action so as to preclude a second action to enforce the reorganization agreement's arbitration clause to settle the dispute on the method of accounting. Defendant argues that, since finding of fact No. 113 entered by the Federal District Court approved its method of accounting, this issue was clearly determined in a prior action, and collateral estoppel applies to bar any future actions in which the proper method of accounting is an issue. We disagree.

The party asserting the doctrine of collateral estoppel has the burden to show that the determinative issue was litigated in a prior proceeding. *Luisi Truck Lines, Inc. v. State Util. & Transp. Comm'n,* 72 Wn.2d 887, 894, 435 P.2d 654 (1967); *Meder v. CCME Corp.,* 7 Wn. App. 801, 807, 502 P.2d 1252 (1972). Issues not material in the first

adjudication, although determined therein, do not necessarily become precluded by operation of collateral estoppel. *Luisi Truck Lines, Inc. v. State Util. & Transp. Comm'n, supra; Dolby v. Fisher,* 1 Wn.2d 181, 189, 95 P.2d 369 (1939); *McGee v. Wineholt,* 23 Wash. 748, 751, 63 P. 571 (1901). *Accord, Dixon v. Fiat–Roosevelt Motors, Inc.,* 8 Wn. App. 689, 695, 509 P.2d 86 (1973). The party asserting the doctrine must prove that the fact determined in the first action is essential, and not merely collateral or incidental, to the right asserted in the second. *McGee v. Wineholt, supra,* at 751–52. *See also Pacific Nat'l Bank v. Bremerton Bridge Co.,* 2 Wn.2d 52, 59, 97 P.2d 162 (1939); *In re Richland Hyatt House, Inc.,* 18 Wn. App. 426, 430, 568 P.2d 825 (1977).

Our Supreme Court has recently discussed this question and has adopted the distinction between ultimate facts and evidentiary facts contained in the Restatement of Judgments. *Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 588 P.2d 725 (1978). According to the Restatement, only questions of fact actually litigated and essential to the judgment in the first adjudication become precluded by collateral estoppel:

> (1) *Where a question of fact essential to the judgment* is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . .
>
> (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action.

(Italics ours.) Restatement of Judgments § 68 (1942). The comments to this section repeat the rule that collateral estoppel applies only when facts determined are essential to the judgment in the first action and state that findings made in the first action on which the judgment is not dependent are not conclusive between the parties in a subsequent action. Restatement of Judgments § 68, comment *o* (1942). The commentators label such findings evidentiary

facts as opposed to the ultimate facts which are essential to the judgment in the first action. Restatement of Judgments § 68, comment *p* (1942). Collateral estoppel, therefore, is confined to ultimate facts—facts directly at issue in the first controversy upon which the claim rests—but does not extend to evidentiary facts, facts which may be in controversy in the first action and are proven but which are merely collateral to the claim asserted. *Seattle–First Nat'l Bank v. Kawachi, supra* at 229.

In the present case we cannot say that the issue of the proper method of accounting, although determined in the federal securities action, was an essential, ultimate fact in the securities fraud action as opposed to merely a collateral or evidentiary fact. We do not have the complaint, other pleadings and complete findings entered in the securities fraud action in the record before us.[2] Therefore, we are unable to determine whether the federal action in fact turned on a resolution of the accounting question, or whether the accounting question was only a collateral issue used to prove or disprove the fraudulent scheme to obtain the stock of Computech without payment asserted by plaintiff. As such, we cannot agree with the trial court that the parties are bound by the finding of the Federal District Court which approved defendant's method of accounting, and we cannot agree collateral estoppel precludes them from seeking to enforce the arbitration clause contained in the reorganization agreement.

▆ Our conclusion is strengthened by the fact that the trial court did not have certified copies of the pleadings and complete findings entered by the Federal District Court

---

[2]In its summary judgment of dismissal the trial court stated that in ruling on defendant's motion it considered the pleadings in the present case, defendant's memorandum in support of its motion and the affidavits of the parties and their attorneys. It appears from the record before us that the only pleadings and findings from the federal case before the trial court when it ruled on the motion for summary judgment were those excerpted in the affidavit of defendant's attorney. In reviewing the granting of a motion for summary judgment we may consider only those matters identified with particularity in the trial court's order. *See LeBeuf v. Atkins*, 93 Wn.2d 34, 604 P.2d 1287 (1980).

before it other than in excerpted form in the affidavit of defendant's attorney. When collateral estoppel is asserted as a bar, the record of the prior action must be before the trial court so that it may determine if the doctrine precludes relitigation of the issue in question. *See Bodeneck v. Cater's Motor Freight Sys., Inc.,* 198 Wash. 21, 29, 86 P.2d 766 (1939). *See also Rufener v. Scott,* 46 Wn.2d 240, 245, 280 P.2d 253 (1955). For these reasons, we hold that the trial court improperly entered judgment for defendant on the basis of collateral estoppel.[3]

Additionally, plaintiff argues that the affidavits submitted by defendant in support of its motion for summary judgment are insufficient under CR 56(e). In view of our reversal on other grounds, we need not address this issue.

We reverse the order of the trial court granting defendant's motion for summary judgment and dismissing plaintiff's action seeking to enforce the arbitration clause on the basis of collateral estoppel. Accordingly, the cause is remanded to Superior Court for further proceedings.

REED, C.J., and PEARSON, J., concur.

---

[3]Defendant asserts in its brief that plaintiff waived his right to enforce the arbitration clause by filing the federal securities action. Waiver is a question of fact which must be resolved by the trier of fact. *Geo. V. Nolte & Co. v. Pieler Constr. Co.,* 54 Wn.2d 30, 34, 337 P.2d 710 (1959). By its very nature, a dismissal granted by summary judgment assumes that there are no material facts in dispute. Therefore, we may not properly consider this question in an appeal of a summary judgment entered on the basis of collateral estoppel.